Filed 11/3/23  P. v. Ordonez CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H050253 |
| Plaintiff and Respondent, | (Monterey County Super. Ct. No. 21CR008104) |
| v. | |
| MICHAEL JOSEPH ORDONEZ, | |
| Defendant and Appellant. | |

Appealing from the trial court's denial of his post-plea *Romero*[1] motion to dismiss a prior strike conviction, defendant Michael Joseph Ordonez contends that the court lacked discretion to find that other factors outweighed statutory mitigating circumstances unless the trial court found "that dismissal of the [prior strike] would endanger public safety."  (Pen. Code, § 1385, subds. (c)(1)-(2).)[2]  We reject that contention.  Accordingly, even assuming subdivision (c) of section 1385 applies to requests to dismiss a prior strike,[3] we affirm.

---

[1] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 530-531 (*Romero*).

[2] Undesignated statutory references are to the Penal Code.

[3] Ordonez's appellate arguments depend on the disputed premise that section 1385, subdivision (c), applies to strike priors.  To the extent it does not, Ordonez has asserted no alternative basis for reversal.

# I.     BACKGROUND

On October 5, 2021, Monterey police officers stopped Ordonez in a white Saturn, in which he was the sole occupant.  Because Ordonez was subject to Postrelease Community Supervision (PRCS), the police searched Ordonez and the Saturn. Altogether, police found two cell phones, $562 in cash, about 62 grams of methamphetamine, about 88 grams of oxycodone pills, about 80 grams of hydrocodone, 64 pills of Cenforce Sildenafil, 21 suboxone strips, two gun magazines with a total of eight live .22 caliber rounds of ammunition, metal knuckles, a "Black Airsoft replica gun with painted black tip[,]" two operable digital scales set to grams, sandwich baggies, and six glass pipes.  Ordonez's phone had text messages indicating "he was selling pills and purchasing pills in large quantities from an individual who was manufacturing the pills."

Ordonez told officers he had ingested heroin and was overdosing, so he was taken to a hospital.  While there, he was Mirandized and agreed to speak to police.  Ordonez told police that he had recently purchased the Saturn and denied knowledge of the firearm ammunition.  Ordonez admitted "ownership of the drugs and stated they were for personal use" but also "stated that the pills were fake."  He admitted knowledge of the metal knuckles and airsoft gun.  He denied knowledge of the ammunition, explaining that he had recently purchased the Saturn.  When asked about the suboxone strips, Ordonez said he was an addict and did not have a prescription.  Ordonez eventually admitted that he had lied about ingesting heroin and was transported to jail for booking.

The Monterey County District Attorney charged Ordonez with six counts: (1) possession for sale of a controlled substance—methamphetamine (Health & Saf. Code, § 11378); (2) sale/offer to sell a controlled substance—methamphetamine (Health & Saf. Code, § 11379, subd. (a)); (3) possession for sale of a controlled substance— oxycodone (Health & Saf. Code, § 11351); (4) sale/transportation/offer to sell a controlled substance—oxycodone (Health & Saf. Code, § 11352, subd. (a)); (5) possession of ammunition by a person prohibited from owning a firearm (§ 30305, subd.

2

(a)(1); and (6) possession of metal knuckles (§ 21810). As to counts 1 and 2, the district attorney alleged an enhancement for excess methamphetamine (§ 1203.073, subd. (b)(2), repealed by Senate Bill No. 73 (2021-2022 Reg. Sess.)). The district attorney also alleged a prior strike. In return for the district attorney's agreement to cap his sentence to four years in prison (the two-year middle term, doubled), Ordonez pleaded no contest to count 1 and admitted the prior strike.

Ordonez, who was 34 at the time of sentencing, committed his prior strike when he was 19 years old. As described by the trial court without objection, the prior offense occurred when Ordonez and three others surrounded two individuals walking their bikes on the street, beat them, and stole a wallet and a backpack. One victim was bleeding at his mouth and forehead. The other was bruised on his head and bleeding near his jaw and mouth. The conviction resulted in a two-year prison sentence.

Ordonez accrued a series of additional convictions in the years between his prior strike and the current offense: (1) a 2012 felony violation of Health and Safety Code section 11377, subdivision (a) resulting in a 32-month prison sentence; (2) a 2016 felony violation of section 4573, subdivision (a) resulting in a 120-day jail sentence and three years of probation; (3) a 2019 felony violation of Health and Safety Code section 11378, resulting in a 32-month prison sentence and three years of PRCS; and (4) a 2021 violation of Health and Safety Code section 11377, subdivision (a) resulting in a four-day jail sentence and one year of probation. In the sentencing report, the probation officer stated that the 2019 offense, which was the reason he was subject to PRCS at the time of the present offense, "basically mirrors the instant offense." As to the current offense, the probation officer opined that "[e]ven if the [*Romero*] Motion [is] granted, the criminal behavior that Ordonez demonstrated in the instant offense certainly deems him a public safety risk which most certainly warrants a prison sentence."

In his briefing to the trial court in support of his *Romero* motion, Ordonez argued that his criminal history reflected that he "is a drug addict and that he sells drugs but it

3

did not show a pattern of violence" because his last violent offense was in 2009.[4]  As to his character and prospects, he argued he demonstrated his ability to "leave his past life behind if . . . given the opportunity" because—"[p]rior to being remanded"[5]—he had been admitted to intensive treatment at Sun Street Centers Outpatient Services, found work, and resided with his girlfriend and youngest child.  Further, he argued that two section 1385, subdivision (c) mitigating factors were present:  the current offense was not a violent felony, and the prior strike was more than five years old.  Ordonez did not argue that his drug addiction constituted a mental illness within the meaning of the statute.

In his own remarks to the court, Ordonez attributed his post-strike criminal conduct to drug addiction that he developed in prison and underscored the absence of any violent conduct in his record since 2009.  Further, Ordonez described his experience contracting COVID-19 for the first time about a month prior to sentencing while in custody.  Explaining that he "never felt sicker" but "received no medical treatment" and was "placed on quarantine" such that he was "unable to see or communicate with any of [his] children or family members," he said that the experience caused him to contemplate suicide before developing a resolve to improve himself because the "last thing [he]

---

[4] The pretrial services report reflects that Ordonez reported daily use of marijuana, methamphetamine, and heroin, including on the day of his arrest but "d[id] not believe [he had] a problem with drug use as he is able to function well."  At the same time, Ordonez "d[id] believe his drug use has caused problems as he continues to be remanded to custody."  The probation report reflects that Ordonez uses marijuana daily and has used methamphetamine since he was 17 with some periods of sobriety, but does not indicate that Ordonez has ever used heroin.  According to the probation report, Ordonez "previously reported being in good physical and mental health.  He has not reported any mental health concerns since his release from California Department of Corrections and Rehabilitation."  Ordonez was given an opportunity to provide additions or corrections to the report, but offered none.

[5] The record reflects that Ordonez was released on bail in January 2022 but was remanded to custody on May 17, 2022 after failing to attend a pretrial hearing.

wanted [his] kids to hear" was that he "died in jail from COVID and the reason for being there was for drugs."

In denying Ordonez's motion, the trial court stated that it had considered all of the mitigating sectors set forth in section 1385, subdivision (c). The court specifically found that both mitigating circumstances raised by Ordonez were present—the current offense was not a violent felony, and the prior strike was more than five years old. The court explained that "the previously mentioned mitigating factors weigh strongly in favor of dismissal of the prior strike allegation pursuant to Penal Code Section 1385. [¶] However, there is substantial evidence of countervailing considerations in furtherance of justice that outweigh the aforementioned relevant mitigating factors pursuant to Penal Code Section 1385." The trial court proceeded to discuss the current offense, the prior strike, Ordonez's other prior felony convictions, concluding that "his prior convictions and the imposition of multiple state prison sentences reveal[] that [Ordonez] ha[s] been taught through the application of formal sanction that such criminal conduct was unacceptable, but he has failed or refused to learn his lesson." Considering his prior criminal history and "the particulars of his background, character, and prospects, which are not positive given his continued decision to consistently violate the law," the trial court found that "exercis[ing] its discretion to strike the prior strike allegation . . . would not be in the furtherance of justice in this particular case."

The trial court sentenced Ordonez to two years, doubled to four as a consequence of the strike prior, with 272 days' credit for time served. Ordonez timely appealed.

## II.    DISCUSSION

### A.    *Romero*

A trial court's authority under section 1385, subdivision (a), to dismiss "an action" includes the authority to dismiss allegations of prior serious or violent convictions (i.e., prior strikes) in the furtherance of justice, considering " ' "both . . . the constitutional rights of the defendant, and the interests of society represented by the People . . . ." ' "

5

(*Romero*, *supra*, 13 Cal.4th at p. 530, italics omitted; see also *People v. Williams* (1998) 17 Cal.4th 148, 161 (*Williams*) [identifying factors to be considered in determining whether a defendant "may be deemed outside the scheme's spirit, in whole or in part"].)

We review for abuse of discretion the grant or denial of a *Romero* motion. (*Williams*, *supra*, 17 Cal.4th at p. 162; see also *People v. Garcia* (1999) 20 Cal.4th 490, 503.) Absent a showing that the trial court's refusal to dismiss a strike allegation was arbitrary or irrational, we presume that the court " ' "acted to achieve [the] legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' " (*People v. Carmony* (2004) 33 Cal.4th 367, 377 (*Carmony*).) Such a discretionary decision " ' "will not be reversed merely because reasonable people might disagree." ' " (*Ibid.*)

**B.**     *Senate Bill No. 81 and Section 1385, Subdivision (c)*

Senate Bill No. 81 (2021-2022 Reg. Sess.) added subdivision (c) to section 1385. Subdivision (c) provides,[6] "Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute." (§ 1385, subd. (c)(1).) "In exercising its discretion under [subdivision (c)], the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in [the subparagraphs to subdivision (c)(2)] are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (§ 1385, subd. (c)(2).) The mitigating circumstances identified in the subparagraphs

---

[6] Section 1385, subdivision (c), was further modified by amendments that went into effect on June 30, 2022. Those amendments did not alter the substantive statutory provisions we discuss here.

include, among others:  (1) "The current offense is not a violent felony as defined in subdivision (c) of Section 667.5[;]" and (2) "The enhancement is based on a prior conviction that is over five years old."  (§ 1385, subd. (c)(2)(F) & (H).)

In *People v. Ortiz* (2023) 87 Cal.App.5th 1087, 1093, review granted Apr. 12, 2023, S278894 (*Ortiz*), we held that the statutory "specification of mandatory factors did not displace the trial court's obligation to exercise discretion in assessing whether dismissal is 'in the furtherance of justice.' "  Moreover, we rejected the contention that the existence of a statutory mitigating circumstance compels a trial court to dismiss an enhancement absent a finding that a dismissal would endanger public safety.  (*Id.* at p. 1098; see also *People v. Mendoza* (2023) 88 Cal.App.5th 287, 297 (*Mendoza*) ["consideration of the mitigating factors in section 1385(c)(2) is not required if the court finds that dismissal of the enhancement would endanger public safety"]; but see *People v. Anderson* (2023) 88 Cal.App.5th 233, 240, review granted Apr. 19, 2023, S278786 (*Anderson*) ["The dismissal *shall* occur but only *if*, in exercising its discretion and giving great weight to certain factors, the court finds dismissal is in the interests of justice or would not endanger public safety"]; *People v. Walker* (2022) 86 Cal.App.5th 386, 399-400, review granted Mar. 22, 2023, S278309 (*Walker*) ["the term 'great weight' places a thumb on the scale that balances the mitigating circumstances favoring dismissal against whether dismissal would endanger public safety, and tips that balance in favor of dismissal unless rebutted by the court's finding that dismissal would endanger public safety"].)  Under our interpretation in *Ortiz*, unless dismissal of an enhancement will endanger public safety, a trial court must afford great weight to evidence of statutory mitigating circumstances in exercising its discretion to determine whether dismissal of the enhancement is in the furtherance of justice.[7]

---

[7] Ordonez argues that *Ortiz* was wrongly decided because it fails to appreciate that the amendments to section 1385, subdivision (c) "were meant to expand *Romero* relief to a broader range of defendants who do not pose a risk of danger to the public."  (Fn.

**C.** *Analysis*

Ordonez contends that the trial court erred in its application of section 1385, subdivision (c), in two ways: (1) the court should have found that a statutory mitigating factor not explicitly raised below—that the "current offense [was] connected to mental illness" (see § 1385, subd. (c)(2)(D))—weighed heavily in favor of dismissal; and (2) the court was required to grant the motion if any of the section 1385, subdivision (c)(2) factors were present unless the court found that dismissal would endanger public safety, which it did not. Applying our recent decision in *Ortiz* to the record in this case, we reject Ordonez's contentions. Ordonez has not shown that the trial court abused its discretion in denying his *Romero* motion. (See *Carmony*, *supra*, 33 Cal.4th at pp. 376-377.)

First, the trial court did not err by failing to find that Ordonez's current offense was connected to mental illness within the meaning of section 1385, subdivision (c)(2)(D). Under the statute, "a mental illness is a mental disorder as identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders." (§ 1385, subd. (c)(5).)[8] "A court may conclude that a defendant's mental illness was connected to the offense if, after reviewing any relevant and credible evidence, including, but not limited to, police reports, preliminary hearing transcripts, witness statements, statements by the defendant's mental health treatment provider, medical records, records or reports by qualified medical experts, or evidence that the defendant displayed

omitted.) The interpretation of section 1385, subdivision (c) adopted in *Ortiz* is consistent with that purpose. The difference between Ordonez's preferred interpretation and the one adopted in *Ortiz* is that Ordonez would interpret the statute to divest the trial court of ultimate discretion in certain cases.

[8] The statute specifically identifies several mental illnesses that are included and several mental illnesses that are excluded. Addiction is not on either list. Accordingly, addiction is covered if it meets the diagnostic criteria for a mental disorder identified in the most recent edition of the manual.

symptoms consistent with the relevant mental disorder at or near the time of the offense, the court concludes that the defendant's mental illness substantially contributed to the defendant's involvement in the commission of the offense." (*Ibid.*) To be sure, Ordonez argued to the trial court that the underlying cause of his current conviction—which was for possession for sale, not for drug use—was drug addiction. But Ordonez neither argued that his offense was connected to mental illness nor introduced evidence linking his self-described addiction to the diagnostic criteria for any mental illnesses (e.g., substance use disorders) in the pertinent manual. Nor did he object to the trial court's identification of only two mitigating factors—"the current offense is not a violent felony as defined in subdivision (c) of Section 667.5" (§ 1385, subd. (c)(2)(F)) and "the enhancement is based on a prior conviction that is over five years old" (§ 1385, subd. (c)(2)(H))—without reference to section 1385, subdivision (c)(2)(D). His failure to assert in the trial court that his addiction met the diagnostic criteria of an identifiable mental illness forfeits his claim under subdivision (c)(2)(D). (See *People v. Trujillo* (2015) 60 Cal.4th 850, 856 [" ' " ' "A constitutional right," or a right of any other sort, "may be forfeited in a criminal case . . . by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it" ' " ' "]; see also *Ortiz*, *supra*, 87 Cal.App.5th at p. 1095, review granted [trial court did not abuse its discretion by refusing to find that mental illness was connected to the offense].)

Second, consistent with our analysis in *Ortiz*, the trial court's treatment of the age of the prior conviction and the nonviolent character of the current offense was within the scope of its discretion. Having found that these mitigating circumstances were present, the trial court acknowledged they "weigh strongly in favor of dismissal." Even so, upon a holistic consideration of the *Williams* factors, the trial court determined that other considerations outweighed the great weight afforded to the mitigating circumstances. As in *Ortiz*, we consider this a proper mode of analysis. (See *Ortiz*, *supra*, 87 Cal.App.5th at p. 1099, review granted.) We see no abuse of discretion in the trial court's reaching its

9

conclusion without an express finding that dismissal of the enhancement would endanger public safety.[9]  (See *ibid*.)

For all the foregoing reasons, Ordonez has not shown an abuse of discretion.[10]

### III.    DISPOSITION

We affirm the judgment.

---

[9] We also reject Ortiz's assertion that the trial court—having ruled before issuance of the divergent opinions in *Walker*, *Anderson*, *Mendoza*, or *Ortiz*—was obliged to resolve the public safety issue in Ordonez's favor.  A reasonable factfinder could infer from Ordonez's past criminal history and current offense—selling methamphetamine from a vehicle containing metal knuckles and firearm ammunition while subject to PRCS—that Ordonez did pose a danger to the public.

[10] Given our resolution of Ordonez's claims, we need not reach the Attorney General's argument that the trial court need not have conducted any analysis under section 1385, subdivision (c).  (Cf. *People v. Burke* (2023) 89 Cal.App.5th 237, 243-244.)

_____

LIE, J.

WE CONCUR:


_____

GROVER, ACTING P.J.



_____

BROMBERG, J.




*People v. Ordonez*
H050253